IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01016-RBJ

CHRISTOPHER BIBBY,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER,

    Defendant.

---

ORDER

---

This matter is before the Court on the City and County of Denver's (hereinafter "Denver") motion to dismiss [ECF No. 12]. For the reasons stated below, the motion is granted.

**FACTS**

On May 13, 2013, Mr. Bibby was booked into Denver County Jail for a violation of probation. ECF No. 12 at ¶¶ 8–9. While he was being booked, Mr. Bibby observed another individual who was "unruly" and "needed many deputies to detain the person and calm them down." *Id.* at ¶ 10. Mr. Bibby was then assigned to a cell with this same person. *Id.* at ¶ 13.

That same day, Mr. Bibby left his cell to go visit the nurse. *Id.* at ¶ 14. Before he returned to his cell, Mr. Bibby asked a deputy if he could move to a different cell because he "feared for his safety" due to his previous observations of his cellmate's demeanor. *Id.* at ¶ 15. The deputy denied his request. *Id.* at ¶ 16.

The deputy called for another deputy to join him. *Id.* at ¶ 17. The second deputy reiterated that Mr. Bibby needed to return to his original cell, and Mr. Bibby again requested a new cell assignment because of his concerns for his safety. *Id.* at ¶ 18. One of the deputies then "took [Mr. Bibby's] arm, spun him around where [Mr. Bibby] hit his head on the column and then fell to the ground." *Id.* at ¶ 19. Additional deputies arrived to "assist in restraining [Mr. Bibby] by pinning him down and shoving a knee in [Mr. Bibby's] head. *Id.* at ¶ 20.

Mr. Bibby's face was bleeding, and the deputies escorted him to the same nurse for evaluation. *Id.* at ¶ 22. The nurse asked Mr. Bibby what had occurred, and he explained that "he requested a new cell as he feared for his safety and was denied." *Id.* at ¶ 23. The nurse responded by telling the attending deputy that "[y]ou have got to stop doing this to people." *Id.* at ¶ 24.

Mr. Bibby alleges "general and special damages, including . . . a cracked ribs [sic], cut on his head, medical expenses, loss of wages, pain, suffering, and severe emotional distress." *Id.* at ¶ 25. On May 13, 2015, Mr. Bibby filed this complaint alleging a violation of 42 U.S.C. § 1983 because the deputies' use of force deprived him of his right to be free from cruel and unusual punishment under the Eighth Amendment. *Id.* at 3. Specifically, he alleges that Denver established customs for the use of force against individuals and failed to train its deputies on the proper use of force. *Id.* at ¶¶ 27–28. He claims that Denver acted with deliberate indifference to his rights. *Id.* at ¶ 30. In response, Denver filed this motion to dismiss on the grounds that Mr. Bibby fails to state a claim upon which relief can be granted. ECF No. 12 at 2.

**DISCUSSION**

    I.    **Standard of Review**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly,* 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

    II.    **Municipal Liability Claim Against Denver**

In general, a municipality cannot be held liable under § 1983 for its employees' actions on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, to establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). A plaintiff may show the existence of a municipal policy or custom in the form of (1) an officially promulgated policy, (2) an informal custom amounting to a widespread practice, (3) the decisions of employees with final policymaking authority, (4) the ratification by final

policymakers of the decisions of their subordinates, or (5) the failure to adequately train or supervise employees. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

A municipality's failure to train its employees adequately can constitute a municipal policy or custom for purposes of § 1983 under very narrow circumstances. *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). A municipality's failure to train must amount to deliberate indifference to the rights of the citizens with whom the police officers come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Ordinarily, the plaintiff must show a "pattern of similar constitutional violations by untrained employees" in order to "demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (internal quotation marks omitted). A pattern of similar violations demonstrates that the municipality's policymakers were on notice that a deficiency in their training program caused employees to violate citizens' rights, and the municipality continued to adhere to the inadequate training program anyways. *Id.* In exceptional circumstances, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations[.]" *Barney v. Pulsipher*, 143 F.3d 1299, 1307–308 (10th Cir. 1998) (internal citation omitted).

Mr. Bibby advances two theories for why Denver faces municipal liability: (1) that a municipal policy or custom was in place and (2) that Denver failed to train its deputies in the use of force. ECF No. 1 at ¶¶ 27–28. On both theories, the Court finds that Mr. Bibby has failed to

4

offer sufficient facts to plausibly establish that a municipal policy or custom caused the alleged constitutional deprivation.

Mr. Bibby provides facts and details in his description of the deputies' response to his request to be transferred to another cell. *Id.* at ¶¶ 15–21. Those facts are sufficient to prove that he suffered an injury at the hands of the deputies. However, his description of the events does not establish that the injury occurred because of an existing municipal custom or because Denver failed to adequately train its deputies.

Mr. Bibby relies on the nurse's statement as his primary proof that Denver maintains a policy or custom that causes deputies to violate inmates' constitutional rights. *Id.* at ¶ 24. This is insufficient even under the liberal motion to dismiss standard. At best, the nurse's statement to the deputy that "[y]ou have to stop doing this to people" is evidence that the nurse has previously treated other inmates for injuries sustained at the hands of the deputy. It would be unreasonable to conclude from that one comment that a jail-wide custom or policy exists that causes deputies to violate individuals' constitutional rights.

In order to prevail on a failure to train theory, Mr. Bibby must offer sufficient evidence of an actual deficiency in the training program. *See Brown v. Gray,* 227 F.3d 1278, 1286 (10th Cir.2000) (stating that "a plaintiff must first prove that the training was in fact inadequate."). Here, Mr. Bibby's allegations regarding Denver's failure to train are conclusory. He merely alleges that Denver "failed to sufficiently train and supervise deputies on the proper use of force against individuals." ECF No. 1 at ¶ 28. He fails to include well-pled facts supporting his assertion that the training was inadequate.

Moreover, Mr. Bibby does not offer sufficient evidence to demonstrate a pattern of harms. His complaint only describes his own incident. He appears to offer the nurse's statement as evidence that the deputies frequently hurt inmates. However, the law requires the pattern of constitutional violations to be sufficiently "similar" to the violation in the case at hand in order to demonstrate that Denver's officials were on notice that their training program was inadequate. *Connick*, 131 S.Ct. at 1360. Here, the nurse's statement is vague, as it does not elaborate on the deputies' conduct, the specific acts the nurse urges them to cease doing, or the other injuries the nurse has witnessed. The nurse's comment to the deputy, taken as true for this purpose, is inadequate to plausibly establish that Denver's failure to train its deputies has resulted in a pattern of similar harms.

Additionally, Mr. Bibby fails to show that this case falls into the narrow subset of cases where deliberate indifference may be found absent a preexisting pattern of violations. Mr. Bibby does not offer evidence that it was "plainly obvious" or "highly predictable" that constitutional violations would result from the alleged inadequate training—in large part because he never identifies specific deficiencies in the training program. Even if the Court were to assume that Denver failed to train its employees in any way regarding the use of force, it is not "plainly obvious" that constitutional violations would result.

## ORDER

For the reasons described above, the motion to dismiss [ECF No. 12] is GRANTED. Final judgment will enter in favor of the City and County of Denver dismissing plaintiff's claims without prejudice. Defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 28th day of October, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge